UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEVEN L. ROBBINS,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, et al.,<br><br>Defendants. | CAUSE NO. 3:23-CV-870-CCB-AZ |

## OPINION AND ORDER

Steven L. Robbins, a prisoner without a lawyer, who is housed in the Indiana State Prison's minimum security unit ("ISO"), filed an amended complaint against five defendants asserting they were deliberately indifferent to a hazardous condition of confinement and serious medical need. ECF 19. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Robbins's amended complaint alleges essentially the same facts as his original complaint. *See* ECF 4. On August 13, 2021, Robbins was told to report to his case manager's office to prepare a progress report for court. ECF 19 at 6. In making his way

to his case manager's office, he entered the administrative area of her building through a narrow hallway that lead into a main hallway where he encountered a wet floor that had no yellow warning signs displayed to alert him about the slippery floors. *Id*. He was not aware that sanitation workers had recently mopped the floor. *Id*. The floor had a slick, smooth tile surface that was regularly waxed and had recently been waxed creating a slicker surface when it was wet. *Id*. As a result, Robbins fell to his side and injured his knee, which required surgery. *Id*. at 6-7.

Robbins asserts that Corrections Officers Dylan Cabanaw and Thomas Frazier were responsible for training and supervising sanitation workers and knew about the hazardous floor conditions. *Id*. at 7. He contends they witnessed offenders falling on the wet floors because there were no yellow warning signs and several offenders had filed grievances about the hazardous conditions. *Id*. at 7-8. Robbins avers that it was not until Cabanaw himself fell in the same location where he had fallen that Cabanaw and Frazier took action to ensure sanitation workers placed yellow warning signs on the wet floors. *Id*. Here, Robbins argues Cabanaw and Frazier effectively approved, condoned, and turned a blind eye to the hazardous conditions because they knew the sanitation workers routinely failed to place yellow warning signs on the wet floors. *Id*. at 8.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety" of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a claim for an Eighth Amendment violation, an inmate must allege that a defendant was deliberately indifferent to an excessive risk to his health or safety. *Sinn*

2

*v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). This encompasses two elements: "(1) the harm to which the prisoner was exposed must be an objectively serious one; and (2) judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk." *Id.* (internal quotation marks omitted). On the second prong, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020).

In general, a fall caused by exposure to wet floors does not amount to an Eighth Amendment violation. *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) ("slippery surfaces . . . without more, cannot constitute a hazardous condition of confinement"); *Perkins v. Atrisco*, No. 3:22-CV-1052-DRL-JEM, 2023 WL 2346275, at *2 (N.D. Ind. Mar. 2, 2023) ("[F]ederal courts are consistent in holding that slip-and-fall incidents, whether on ice, water, or slippery floors, do not meet the deliberate indifference standard of Eighth Amendment conditions of confinement claims."). Sometimes there are extenuating circumstances that transform a slip and fall into an Eighth Amendment violation. *See Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (finding Anderson stated claim against guard who refused his request for assistance and forced Anderson to traverse 13 stairs "clogged with several days' of accumulated food and rubbish" while handcuffed

3

behind the back); *Balle v. Kennedy*, 73 F.4th 545 (7th Cir. 2023) (acknowledging claim where inmate was ordered to carry "scalding" water in a bucket over wet, uneven floor). But, here, Robbins identifies no such extenuating circumstances.

Robbins's allegation that Cabanaw and Frazier knew about the risk the floors posed when wet and failed to supervise and train sanitation workers likewise does not establish an Eighth Amendment violation. In the context of the Eighth Amendment, a failure to train claim can only be maintained against a municipality. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) *citing Farmer,* 511 U.S. at 841. Cabanaw and Frazier are not municipalities. To the extent Robbins alleges that they did not properly supervise the sanitation workers, there is no general respondeat superior liability under 42 U.S.C. § 1983, and they cannot be held liable simply because they employ or supervise these workers. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). While Cabanaw and Frazier may be held liable if they know about constitutional violations and facilitate, approve, condone, or turn a blind eye, as already explained, a floor that is occasionally slippery after being mopped does not amount to a constitutional violation. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019).

After his fall, Robbins was taken to the medical unit for treatment. ECF 19 at 10. When he arrived, he told Dr. Nancy Marthakis and Nurse Ashley Burnham he had

injured his right knee and was in extreme pain. *Id*. They initially examined his knee and an x-ray was ordered, which showed he did not have any broken bones, fractures, or dislocations. *Id*. Dr. Marthakis prescribed Tylenol, an ace bandage, and crutches. *Id*. He was also instructed to keep his knee elevated and use an ice pack. *Id*.

On August 26, 2021, Robbins complained to Dr. Marthakis and Nurse Burnham about having acute pain in his knee and that Tylenol was not alleviating his pain. *Id*. at 10-11. He told them he needed different medication, but they continued to prescribe Tylenol twice a day, which was given to him daily at 7:00 a.m. and 2:00 p.m., along with an ice pack. *Id*. at 11. Because his last dose of Tylenol was given to him at 2:00 p.m. each day, he was in pain for seventeen hours until he received his 7:00 a.m. dosage because there is no medical staff located in ISO and medical staff would only come to his unit if an emergency medical signal was called. *Id*. Robbins also explains that he complained numerous times to Dr. Marthakis and Nurse Burnham about his knee pain, but he does not provide dates or specifics about these interactions. *Id*.

Robbins next saw Nurse Practitioner Diane Thews for a medical consultation. *Id*. She ordered an MRI of his right knee because of possible ligament, muscle, and tissue tears. *Id*. It is unclear when Robbins's appointment with Nurse Practitioner Thews took place, but by September 23, 2021, he had an MRI of his knee at Franciscan Hospital. *Id*. The MRI showed "a high-tearing of the quadriceps tendon insertion with retraction, and meniscus tear." *Id*. On November 3, 2022, Robbins was evaluated by an outside doctor who ordered a second MRI of his knee. *Id*. at 12. The second MRI was done on

5

December 19, 2022. *Id*. About six months later, on June 30, 2023, Robbins had surgery to repair his torn quadriceps tendon. *Id*. After the surgery, the surgeon told Robbins that, given the delay in treatment and surgery, his injury had worsened and, if he was injured again, he would likely require a knee replacement. *Id*. Robbins has ongoing problems with his knee, including pain and limits in mobility. *Id*.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." (citation and quotation marks omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Because there is no one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Persisting with a course of treatment known to be ineffective can amount to deliberate indifference. *Id.* "Mere negligence will not suffice, and deliberate indifference is not coextensive with medical malpractice." *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024).

The allegations in Robbins's amended complaint do not permit a plausible inference that Dr. Marthakis and Nurse Burnham were deliberately indifferent to his medical needs following his right knee injury. Initially, they examined his knee and ordered an x-ray, which showed he did not have any broken bones, fractures, or dislocations. Dr. Marthakis then prescribed Tylenol, an ace bandage, and crutches. He was also advised to elevate his knee and use an ice pack. These actions do not amount to deliberate indifference.

While Robbins asserts that Tylenol was ineffective in relieving his pain, he has not pled facts from which the court can infer that Dr. Marthakis did not exercise her medical judgment when she prescribed this medication. There are also no facts to suggest that either Dr. Marthakis or Nurse Burnham were responsible for any delays in treatment after the initial MRI of his knee. In sum, Robbins has not plausibly alleged Dr.

Marthakis and Nurse Burnham were deliberately indifferent to his medical needs after he injured his right knee.

Furthermore, Robbins has sued Warden Ron Neal. However, other than listing Warden Neal in the caption of the case, Robbins does not explain why he is suing him. Therefore, he may not proceed against Warden Neal.

As a final matter, to the extent Robbins is asserting state law claims against the defendants, they will not be considered because his amended complaint does not state a federal claim, and this court will not exercise supplemental jurisdiction over state law claims in the absence of a federal claim. *See Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claim conferring original jurisdiction before trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)(3)."). If Robbins believes he can state a claim based on (and consistent with) the events described in his amended complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

8

For these reasons, the court:

(1) **GRANTS** Steven L. Robbins until **August 21, 2025**, to file a second amended complaint; and

(2) **CAUTIONS** Steven L. Robbins if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 18, 2025.

        /s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT